**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MAXUS CAPITAL GROUP, LLC**, | ) | |
| 959 W. St. Clair Avenue, Suite 300 | ) | CASE NO. _____ |
| Cleveland, OH 44113, | ) | |
| | ) | JUDGE _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **VIVAKOR, INC.**, | ) | |
| 5220 Spring Valley Road, Suite 500 | ) | **VERIFIED COMPLAINT** |
| Dallas, TX 75254-2466 | ) | |
| | ) | |
| **VIVAKOR TRANSPORTATION LLC**, | ) | |
| c/o Capitol Corporate Services, Inc. | ) | |
| 1501 S. Mopac Expy, Suite 220 | ) | |
| Austin, TX 78746-7541 | ) | |
| | ) | |
| **VIVAVENTURES REMEDIATION | ) | |
| CORPORATION**, | ) | |
| c/o James H. Ballengee | ) | |
| 2260 Monitor Drive | ) | |
| Dallas, TX 75207 | ) | |
| | ) | |
| **JAMES BALLENGEE**, | ) | |
| 6617 Golf Drive | ) | |
| Dallas, TX 75254 | ) | |
| | ) | |
| **SILVER FUELS DELHI LLC**, | ) | |
| c/o Capitol Corporate Services, Inc. | ) | |
| 8550 United Plaza Building II, Suite 305 | ) | |
| Baton Rouge, LA 70809 | ) | |
| | ) | |
| **JORGAN DEVELOPMENT, LLC**, | ) | |
| c/o James Ballengee | ) | |
| 9860 Highway 80 | ) | |
| Minden, LA 71055-7918 | ) | |
| | ) | |
| **MERIDIAN EQUIPMENT LEASING | ) | |
| LLC**, | ) | |
| c/o Capitol Corporate Services, Inc. | ) | |
| 1501 S. Mopac Expy, Suite 220 | ) | |
| Austin, TX 78746-7541 | ) | |

24127493

| | |
|---|---|
| **WHITE CLAW COLORADO CITY** | ) |
| **LLC**, | ) |
| c/o Capitol Corporate Services, Inc. | ) |
| 1501 S. Mopac Expy, Suite 220 | ) |
| Austin, TX 78746-7541 | ) |
| | ) |
| **BACCHUS CAPITAL TRADING, LLC**, | ) |
| 5220 Spring Valley Road, Suite 520 | ) |
| Dallas, TX 75254-2466 | ) |
| | ) |
| **SILVER FUELS PROCESSING LLC** | ) |
| 5220 Spring Valley Road, Suite 500 | ) |
| Dallas, TX 75254-2466 | ) |
| | ) |
| **SILVER FUELS, LLC** | ) |
| c/o Mary Kilpatrick | ) |
| 3838 Oaklawn Avenue, Suite 1150 | ) |
| Dallas, TX 75219 | ) |
| | ) |
| **WHITE CLAW CRUDE, LLC** | ) |
| 3838 Oak Lawn Avenue, Suite 1150 | ) |
| Dallas, TX 75219 | ) |
| | ) |
| **ENDEAVOR CRUDE, LLC** | ) |
| 5220 Spring Valley Road, Suite 500 | ) |
| Dallas, TX 75254-2466 | ) |
| | ) |
| **EQUIPMENT TRANSPORT, LLC** | ) |
| 5200 Spring Valley Road, Suite 500 | ) |
| Dallas, TX 75254-2466 | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiff, Maxus Capital Group, LLC, by and through undersigned counsel, for its Complaint against Defendants Vivakor, Inc., Vivakor Transportation, LLC, VivaVentures Remediation Corporation, James Ballengee, Silver Fuels Delhi LLC, Jorgan Development, LLC, Meridian Equipment Leasing LLC, White Claw Colorado City LLC, Bacchus Capital Trading, LLC, Silver Fuels Processing LLC, Silver Fuels, LLC, White Claw Crude, LLC, Endeavor Crude, LLC, and Equipment Transport, LLC, (collectively, "**Defendants**"), states as follows:

2

## SUMMARY OF THE CLAIMS

1.      This lawsuit seeks to invoke the equitable powers of this Court to stop a large, multi-state enterprise in which bad actors have used a publicly traded company and its various subsidiaries to hinder, delay, and defraud creditors – including Maxus.

2.      Specifically, Maxus asserts claims for supplemental proceedings in aid of execution of a Cognovit Judgment that it obtained in January 2026 upon which an amount in excess of $20 million is due and owing, as well as the appointment of a receiver and injunctive relief necessary to preserve the assets of the Defendants.  This relief is necessary because the Defendants – under the control of Defendant Ballengee – are engaged in a large, multi-state enterprise that makes ordinary collection and execution efforts difficult and less effective, especially given the nature of highly mobile equipment that is the subject of leases between Maxus and the Defendants. Moreover, in light of information that has come to light – including statements by Vivakor's former CFO concerning Ballengee's and the other Defendants' efforts to "hinder, delay, and defraud" creditors – a receivership and an injunction are necessary to prevent the enterprise from dissipating all of its assets and becoming insolvent.  And, without such equitable remedies, Maxus will be irreparably harmed and unable to collect upon the amounts due and owing to it.

## PARTIES

### Plaintiff

3.      Plaintiff Maxus Capital Group, LLC ("**Maxus**") is a citizen of Ohio, New York, Georgia, and Florida, because its ultimate beneficial ownership is in individuals or corporations who are citizens of those states.  It is a Delaware limited liability company with its principal place of business at 959 W. St. Clair Avenue, Suite 300, Cleveland, Ohio 44113.

**The Judgment Debtors**

4.      Defendant Vivakor, Inc. ("**Vivakor**") is a citizen of Nevada and Texas, and a publicly traded company presently listed with NASDAQ and traded under the symbol VIVK. Vivakor is a Nevada corporation with its principal place of business at 5220 Spring Valley Road, Suite 500, Dallas, Texas 75254-2466.    Defendant Ballengee is Chief Executive Officer of Vivakor.

5.      Vivakor Transportation, LLC ("**Vivakor Transportation**") is a citizen of Nevada and Texas. It is a Texas limited liability company, and is a wholly owned subsidiary of Vivakor Administration, LLC ("**Vivakor Administration**"), whose sole member is Vivakor.

6.      VivaVentures Remediation Corporation ("**VivaVentures**") is a citizen of Texas.  It is a Texas corporation with its principal place of business 5220 Spring Valley Road, Suite 500, Dallas, Texas 75254-2466. VivaVentures is wholly owned or managed by Vivakor Administration.

7.      James Ballengee ("**Ballengee**") is a citizen of Texas.  Ballengee resides at 6617 Golf Drive, Dallas, Texas 75205-1211.

8.      Defendant Silver Fuels Delhi, LLC ("**SF Delhi**") is a citizen of Nevada and Texas. It is a Louisiana limited liability company, wholly owned by VM Facilities, LLC ("**VM Facilities**"), which is wholly owned by Vivakor Operating, LLC ("**Vivakor Operating**"), which is wholly owned by Vivakor.

9.      Defendant Jorgan Development, LLC ("**Jorgan**") is a citizen of Texas.  It is a Louisiana limited liability company, and is wholly owned by James Ballengee, as trustee of the Mary Helen Ballengee Trust (the "**Ballengee Trust**"), a citizen of Texas.

10. Defendant Meridian Equipment Leasing, LLC ("**Meridian**") is a citizen of Nevada and Texas. It is a Texas limited liability company that, upon information and belief, is wholly owned by Vivakor Administration. Alternatively, Meridian may be a citizen of only Texas, as a wholly owned subsidiary of Jorgan.

11. Defendant White Claw Colorado City, LLC ("**WC Colorado**") is a citizen of Nevada and Texas. WC Colorado is a Texas limited liability company that, upon information and belief, is wholly owned by Vivakor Administration. Alternatively, Meridian may be a citizen of only Texas, with its members being Ballengee and Mary Kilpatrick ("**Kilpatrick**"), a Texas citizen residing at 3838 Oaklawn Avenue, Suite 1150, Dallas, TX 75219.

12. Defendant Bacchus Capital Trading, LLC ("**Bacchus**") is a citizen of Texas. It is a Louisiana limited liability company that, upon information and belief, is wholly owned by Ballengee.

13. Defendant Silver Fuels Processing LLC ("**SF Processing**") is a citizen of Nevada and Texas. It is a Texas limited liability company that, upon information and belief, is wholly owned by VM Facilities. Alternatively, SF Processing is wholly owned by Vivakor Administration.

14. Defendant Silver Fuels, LLC ("**Silver Fuels**") is a citizen of Nevada and Texas. It is a Texas limited liability company that, upon information and belief, is wholly owned by VM Facilities or Vivakor Administration. Alternatively, Silver Fuels is a citizen of Texas because it is wholly owned by Ballengee and Kilpatrick.

15. Defendant White Claw Crude, LLC ("**WC Crude**") is a citizen of Texas. It is a Texas limited liability company that, upon information and belief, is wholly owned by Ballengee and Kilpatrick.

16. Defendant Endeavor Crude, LLC ("**Endeavor**") is a citizen of Nevada and Texas. It is a Texas limited liability company that, upon information and belief, is owned Vivakor Transportation or Vivakor Administration.

17. Defendant Equipment Transport, LLC ("**E Transport**") is a citizen of Nevada and Texas.  It is a Pennsylvania limited liability company that, upon information and belief, is wholly owned by Vivakor Administration.  Alternatively, E Transport is a citizen of Texas because it is wholly owned by Jorgan.

18. Vivakor, Vivakor Transportation, VivaVentures, SF Delhi, Jorgan, Meridian, WC Colorado, Bacchus, SF Processing, Silver Fuels, WC Crude, Endeavor, and E Transport, may be collectively referred to as the "**Corporate Judgment Debtors**," and together with Ballengee may be collectively referred to as the "**Judgment Debtors**."

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.  Complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

20. Venue is appropriate in this Court because, pursuant to the underlying 1450 Lease, 1452 Lease, 1462 Lease, and Forbearance Agreement (each defined below), the Defendants agreed to "submit to the sole and exclusive jurisdiction of the state and/or federal courts in the state of Ohio."  Moreover, this Lawsuit concerns rights and interests of an Ohio company, arising under contracts executed and entered into within Ohio and the territorial jurisdiction of this Court.

## FACTS APPLICABLE TO ALL CLAIMS[1]

### The 1452 Lease

21.　　Maxus is the lessor and Meridian is the lessee under that certain Master Agreement No. 1452 and its associated schedules, dated December 28, 2021 (together, the "**1452 Lease**"), concerning the sale and lease-back of certain equipment and fixtures described in Schedule Nos. 001 through 021 (the "**1452 Equipment**").  The 1452 Equipment is primarily located in Oklahoma and Texas.

22.　　As further security for Meridian's obligations under the 1452 Lease, Endeavor, Equipment Transport, Jorgan, Silver Fuels, SF Delhi, SF Processing, Vivakor, Vivakor Transportation, VivaVentures, WC Crude, and WC Colorado executed corporate guarantees, and Ballengee executed a personal guaranty, each of which absolutely and unconditionally guaranteed the lessees' obligations under the 1450 Lease (the "**1452 Guarantees**").

### The 1450 Lease

23.　　Maxus is the lessor, and SF Delhi and Jorgan are the co-lessees, under that certain Master Agreement No. 1450 and its associated schedules, dated March 17, 2020 (together, the "**1450 Lease**"), concerning the sale and lease-back of certain equipment described in Schedule Nos. 001 and 002 (the "**1450 Equipment**").  The primary location for all of the 1450 Equipment was designated in Schedule Nos. 001 and 002 as 489 Highway 609, Delhi, Richland Parish, Louisiana 71232.

24.　　As further security for obligations due and owing to Maxus under the 1450 Lease, Bacchus, Jorgan, Meridian, Silver Fuels, SF Processing, and WC Crude executed corporate

---

[1] The 1450 Lease, 1452 Lease, 1462 Lease (defined below), together with their ancillary and constituent documents, comprise more than 300 pages.  Due to the volume of these documents – all of which are already available in the public docket in related proceedings referenced herein – these documents are not attached to this Complaint.

guarantees, and Ballengee executed a personal guaranty, each of which absolutely and unconditionally guaranteed the co-lessees' obligations under the 1450 Lease (the "**1450 Guarantees**").

**The 1462 Lease**

25.     Maxus is the lessor, and WC Colorado and Jorgan are the co-lessees under that certain Master Agreement No. 1462 and its associated schedules dated December 28, 2021 (together, the "**1462 Lease**"), concerning the sale and lease-back of certain equipment and fixtures described in Schedule Nos. 001 through 004 (the "**1462 Equipment**").

26.     As further security for WC Colorado's and Jorgan's obligations under the 1462 Lease, Endeavor, Jorgan, Meridian, Silver Fuels, SF Delhi, SF Processing, Vivakor, VivaVentures, and WC Crude executed corporate guarantees, and Ballengee executed a personal guaranty, each of which absolutely and unconditionally guaranteed the co-lessees' obligations under the 1462 Lease (the "**1462 Guarantees**").

**The Forbearance Agreement**

27.     Defendants failed to make all monthly payments when due under the 1450 Lease, 1452 Lease, and 1462 Lease.  Specifically, Defendants failed to make the monthly payments due and payable to Maxus on March 1, April 1, May 1, and June 1, 2025.  As a result of the unpaid and overdue amounts, Events of Default occurred on each of March 4, April 4, May 4, and June 4, 2025. And Maxus declared the 1450 Lease and 1462 Lease in default on June 5, 2025.

28.     Maxus's June 5, 2025 Declaration of Default accelerated the Stipulated Loss Amount under all Schedules to the Leases.

29.     On July 30, 2025, Maxus agreed to forbear from exercising its default remedies on terms set forth in that certain Forbearance Agreement, dated July 30, 2025, and that certain

8

Amendment to Forbearance Agreement, dated July 30, 2025 (collectively, the "**Forbearance Agreement**"). The Forbearance Agreement was executed in Cuyahoga County, Ohio, and it included warrant of attorney provisions meeting all of the requirements under Ohio law.

30.     With respect to the 1452 Lease, the Judgment Debtors, pursuant to the Forbearance Agreement, as amended, jointly and severally acknowledged, stipulated and affirmed they owed, as of July 24, 2025, a total of $20,350,110.63 under the 1452 Lease and 1452 Guarantees, inclusive of $20,289,242.90 comprised of past-due rents, administrative costs/fees, and the stipulated loss amount (the "**1452 Principal**") and $60,867.73 in accrued interest through July 24, 2025. Such stated amount was the amount due and owing to Maxus under the 1452 Lease and 1452 Guarantees following the application by Maxus of all reserves, security deposits, specific payments and pro-rata general payments received through July 24, 2025.

31.     With respect to the 1450 Lease, the Judgment Debtors, pursuant to the Forbearance Agreement, as amended, jointly and severally acknowledged, stipulated and affirmed they owed, as of July 24, 2025, a total of $1,253,665.06, inclusive of $1,244,950.41 comprised of past-due rents, administrative costs/fees, and the stipulated loss amount (the "**1450 Principal**") and $8,714.65 in accrued interest through July 24, 2025. Such stated amount was the amount due and owing to Maxus under the 1450 Lease and 1450 Guarantees following the application by Maxus of all reserves, security deposits, specific payments and pro-rata general payments received through July 24, 2025.

32.     With respect to the 1462 Lease, the Judgment Debtors, pursuant to the Forbearance Agreement, as amended, jointly and severally acknowledged, stipulated and affirmed they owed, as of July 24, 2025, a total of $7,519,101.23, inclusive of $7,446,833.40 comprised of past-due rents, administrative costs/fees, and the stipulated loss amount (the "**1462 Principal**") and

$52,267.83 in accrued interest through July 24, 2025.  Such stated amount was the amount due and owing to Maxus under the 1462 Lease and 1462 Guarantees following the application by Maxus of all reserves, security deposits, specific payments and pro-rata general payments received through July 24, 2025.

33.     The Judgment Debtors further jointly and severally acknowledged, stipulated and affirmed that interest would continue to accrue on the respective Principal Amounts at the rate of 12% per annum, and that the sums shown on Maxus's electronic data processing systems or other memoranda would be presumptive evidence of the accrued interest amounts due.

34.     The Judgment Debtors further agreed that "[a]s of the date of this [Forbearance Agreement], the amounts set forth above are unconditionally due and payable as provided in the Related Documents," affirmed that there were no unrecited offsets or claims against Maxus, that all amounts received by Maxus had been accounted for, and that "[t]he Obligors jointly and severally affirm[ed] the validity of the 1450, 1452, and 1462 Leases and the other Related Documents and the amounts due and owing to Maxus thereunder and agree[d] that the same shall be paid in full."

35.     In consideration of Maxus's agreement to forbear from exercising its rights and remedies pursuant to the terms of the Forbearance Agreement, Judgment Debtors jointly and severally agreed to pay to Maxus a **"Forbearance Fee"** equal to $500,000.00, and consisting of: (A) a "Cash Fee" of $250,000.00; and (B) a "Shares Fee" of the equivalent of $250,000.00 in common shares of Vivakor (VIVK).  The "Forbearance Fee" was fully earned, payable, and due to Maxus on the date of the Forbearance Agreement, *i.e.*, July 30, 2025.  The Cash Fee was received.

10

36.     The Forbearance Agreement further included a strict payment schedule by which certain milestone payments and monthly payments were to be made.

37.     In addition to these various payment obligations, Judgment Debtors had further obligations including certain financial reporting, and other continuing obligations due to Maxus and the subject equipment arising under the Forbearance Agreement and the respective 1450, 1452, and 1462 Leases and Guarantees.

38.     Schedules to both the 1450 Lease and 1462 Lease were amended following the execution of the Forbearance Agreement, pursuant to: (a) that certain Letter Agreement dated August 21, 2025 concerning Schedule No. 001 to the 1450 Lease; (b) that certain Letter Agreement dated October 22, 2025 concerning Schedule No. 002 to the 1450 Lease; and (c) that other certain Letter Agreement dated October 22, 2025 concerning Schedule No. 001 to the 1462 Lease.

39.     Notwithstanding the negotiated Forbearance Agreement, Maxus' accommodation of Judgment Debtors' needs in agreeing to the Amendment to Forbearance Agreement on the same date that the initial Forbearance Agreement was executed[2], and the subsequent execution of the Letter Amendments, Judgment Debtors failed to meet the payment obligations due and owing to Maxus.

40.     On August 14, 2025, Maxus sent a "Notice of Overdue Payments & Reservation of Rights" letter to Defendants, giving them notice and demanding cure of the then-occurring Events of Default resulting from their failure to pay the Forbearance Fee due on July 30, 2025.

---

[2] Immediately following the execution of the Forbearance Agreement, Defendant Ballengee realized that the Defendants would not be able to make certain payments required under the Forbearance Agreement.  To avoid an imminent default under the Forbearance Agreement, Maxus and the Defendants executed that certain Amendment to Forbearance Agreement, modifying the terms of Sections 5.3.4, 5.3.5, and 5.3.6 to the Forbearance Agreement, and establishing new terms for the August and September 2025 payments that were originally due under those provisions.

41.     On October 3, 2025, Maxus sent a "Notice of Default & Reservation of Rights" letter to Defendants, giving them further notice of the continuing and additional Events of Default.

**The Cognovit Judgment**

42.     On January 6, 2026, Maxus filed a Complaint for Cognovit Judgment upon the obligations due and owing under the 1452 Lease, pursuant to the warrant of attorney provision set forth in the Forbearance Agreement, in *Maxus Capital Group, LLC v. Vivakor, Inc., et al.*, Cuyahoga County, Ohio Court of Common Pleas Case No. CV-26-130704 (the "**Cognovit Action**").

43.     Because the 1450 Lease and 1462 Lease were subsequently amended, Maxus was not able to seek a judgment upon those leases in the Cognovit Action.[3]

44.     On January 6, 2026, the Cuyahoga County, Ohio Court of Common Pleas entered judgment in the Cognovit Action as follows:

a.     "Forbearance Fee: On Count I of the Complaint, judgment is entered in favor of Plaintiff and against all Defendants, jointly and severally, in the amount of $250,000.00, plus post-judgment interest on that amount from and after the date of this Judgment Entry[], at the statutory rate of 8% per annum;"

b.     "1452 Lease and Guarantees:  On Count II of the Complaint, judgment is entered in favor of Plaintiff and against Defendants Meridian Equipment Leasing LLC, Silver Fuels Delhi LLC, Jorgan Development LLC, White Claw Colorado City LLC, Silver Fuels Processing LLC, Silver Fuels LLC, White Claw Crude LLC, Endeavor Crude LLC, CPE Gathering Midcon

---

[3] Maxus's claims under the 1450 Lease and 1462 Lease are currently pending entry of judgment in *Maxus Capital Group, LLC v. Vivakor, Inc., et al.*, Cuyahoga County, Ohio Court of Common Pleas Case No. CV-26-133978.

12

LLC, Equipment Transport LLC, Vivakor Inc., Vivakor Transportation LLC, VivaVentures Remediation Corporation, and James Ballengee, jointly and severally, in the amount of $20,085,713.00, plus interest from, including and after December 23, 2025, on the unpaid 1452 Principal amount of $19,773,668.26 at the default rate of 12% per annum."

45. The Court also determined that Maxus was entitled to its reasonable costs and attorneys' fees in collection efforts, subject to a post-judgment motion for same. However, there was "no just reason to delay entry of a final judgment . . . pursuant to R.C. 2505.02 and Civ.R. 54," and ordered that the judgment was a final judgment under Ohio law.

46. The same order provided that the Judgment was without prejudice to any claim arising with respect to the 1450 Lease and 1462 Lease, and their respective guarantees, as amended in letter agreements following the Forbearance Agreement, and that "nothing in this Judgment or this action shall be construed to limit any rights, remedies, or causes of action which Plaintiff may have or may come to have with respect to such agreements."

47. A copy of the Judgment entered in the Cognovit Action (the "**Cognovit Judgment**") is attached to this Complaint as **Exhibit 1**.

### The Dissipation of Assets, Fraudulent Transfers, and Obscuring of Information in Hinderance of Collection Efforts

48. Since the time Maxus obtained the Cognovit Judgment it has engaged in numerous efforts to domesticate and record its judgment in various states, locate the leased equipment owned by Maxus, locate other collateral, and otherwise enforce its rights – with which efforts the Judgment Debtors have been uncooperative. Moreover, the Judgment Debtors have used the multi-state nature of their operations to thwart Maxus's enforcement efforts, including by: (a) refusing to disclose the locations of Maxus's equipment; (b) entering into other agreements or

financing arrangements that impair Maxus's equipment and other collateral under the leases; (c) upon information and belief, transferring or diverting funds and assets to insiders or other corporate entities within their control; and (d) failing to enforce their own contractual rights against third parties, depriving the Judgment Debtors of revenue.

49.     On February 20, 2026, Vivakor's former Chief Financial Officer ("CFO") Tyler Nelson filed a lawsuit in *Nelson v. Vivakor, Inc., et al.*, Central District of California Case No. 2:26-cv-1885, alleging that Ballengee had used his position as Vivakor CEO and Chairman of the Board to "**secretly [begin] a series of transactions intended to hinder, delay, and defraud [Vivakor's] creditors**." This included "**transfer[ring the Vivakor-entities'] assets to related entities beneficially-owned by him, resulting in significant undercapitalization of the Vivakor Defendants . . .**" (Docket for C.D. Cal. Case No. 2:26-cv-1885, Doc. 1 PageID# 46.)   Nelson's complaint further alleged that:

> Ballengee paid his insider loans . . . loans of Vivakor consultant William Tuorto, and accounts payable for alleged vendor Edgewood by using subsidiaries formed or acquired where he knew certain banking internal controls were not yet present in the acquired entities (including the need of dual authorization). The subsidiaries were **conduits used by Ballengee to divert funds and dictate disbursements and hinder creditors from collecting.** Ballengee also used certain subsidiaries to have Vivakor assist to pay down debt he personally guaranteed—he had Vivakor acquire the subsidiaries, including the subsidiary debt eh took out in the subsidiary's name, whereby it was known that Vivakor and the subsidiaries being acquired could not make the payments on such loans that were maturing. . . . Ballengee then had Vivakor raise capital to pay down his personally guaranteed loans. . . ."

(*Id.*)

50.     On April 2, 2026, Validus Energy II Midcon, LLC ("**Validus**"), filed an action in Blaine County, Oklahoma, against Vivakor and Vivakor-subsidiary/Judgment Debtor CPE Gathering Midcon LLC ("**CPE**"), captioned *Validus Energy II Midcon, LLC v. Vivakor, Inc., et al.*, Case No. CJ-2026-0017.  In that case, Validus alleges that CPE – which is controlled by

14

Vivakor and Ballengee – had "wrongfully converted in excess of . . . $6,250,000.00" worth of crude oil or sale proceeds, and had engaged in other malfeasance. (Docket for Blaine County, Oklahoma Case No. CJ-2026-0017.) Validus sought and obtained a temporary receiver over CPE, which receivership is continuing.

51. Consistent with Nelson's allegations that Vivakor, Ballengee, and the various entities under their control had devised a scheme to "**hinder, delay, and defraud**" creditors, Maxus has encountered significant resistance and difficulty in enforcing its rights across the multi-state enterprise that the Judgment Debtors constructed.

52. As part of its efforts to locate and secure its equipment, Maxus has conducted numerous inspections to investigate the equipment's status. On or about April 23, 2026, Maxus conducted an inspection using Quiktrak, and discovered that two vehicles that Maxus owned and leased pursuant to Schedule No. 020 of the 1452 Lease were **stolen**: (A) a 2017 Ford F-450/Service Truck, VIN 1FDUF4GT9HDA09206; and (B) a 2019 Ram 1500 Classic Tradesman Crew Cab, 4WD, VIN 1C6RR7LT6KS589601. Both were stolen from the "Hog Road Yard," (31.4205680, -103.5527690), located in Pecos, TX, and remain unaccounted for. A police report was filed the same day with the Reeves County Sheriff's Office, though an official copy of the Police Report is not yet available.

53. This determination that the equipment was *stolen* followed Endeavor Director of Operations Chris Brown's April 8, 2026 submission of an equipment audit, in which Endeavor could not verify or account for the location of 48 vehicles that Maxus leased to the Judgment Debtors under the 1452 Lease at that time. An additional 6 units were not at the "Hog Road Yard" contrary to Chris Brown's report; this was discovered after a Quiktrak inspection for a total of 54 units with unknown locations. An additional 1 unit was missing from Omega, Oklahoma, with a

15

report that they "did not know where the unit was located." And 6 units were missing from a location in Edinburg, Texas.

54.     Maxus has also on numerous occasions sought key information necessary for its enforcement efforts, including: (a) contact information for the locations associated with the 1450 Equipment, 1452 Equipment, and 1462 Equipment; (b) missing location details for 48 vehicles leased under the 1452 Lease; (c) financial statements for the Judgment Debtors; (d) insurance certificates for the 1450 Equipment, 1452 Equipment, and 1462 Equipment; (e) Vivakor's books and records; (f) details on the outcome of contemplated transactions between Vivakor and Olenox Industries, Inc.[4]; (g) Ballengee's personal financial statements; (h) an organizational chart relating to Judgment Debtor entities divested from Vivakor and transferred to Jorgan; (i) the status of contracts and transactions between Silver Fuels and other entities (Denbury/Exxon); and (j) information regarding the operations of and level of throughput at the Silver Fuels facility. Maxus made these various requests by emails to Ballengee, Kilpatrick, and William Tuorto (identified as a "Vivakor consultant" in former CFO Nelson's lawsuit) on each of February 12, 18, 25, March 5, 10, 12, 13, 16, 17, 18, 19, 20, 27, and April 9, 16, 27, and 30, 2026. Maxus is also requesting information on (k) the White Claw Colorado City Station including level of operations/throughput processed and delivered through the system monthly and all contracts associated with the White Claw Colorado City Station location; (l) the Houston Wash Plant including level of operations, if any, and all contracts associated with the Houston Wash Plant location; (m) all contracts between CPE Midcon and Validus or any other contracts that are

---

[4] Vivakor had previously published an announcement to its shareholders that it was engaged in negotiations and a contemplated sale of CPE Gathering Midcon, LLC or its operations to Olenox Industries, Inc.  The sale was intended to close by the end of March 2026, but appears to not have gone through.

associated with the CPE Midcon location, and the monthly accounting of throughput in and out of the CPE Midcon location.

55. Despite representations by Ballengee on April 28, 2026, that he would provide "all of this by the end of business" and a representation that he was "working on the additional information" on April 29, 2026, most of above-requested information has not been provided. Ballengee did indicate, however, on March 20, 2026, that certain required insurance on the equipment was lapsed, and that he was trying to obtain an extension from the insurance companies. The failure to maintain the required insurance is an additional Event of Default under the leases, and places Maxus's equipment at significant risk of loss.

**COUNT I**
**SUPPLEMENTARY PROCEEDINGS IN AID OF EXECUTION**
**The Judgment Debtors**

56. Maxus realleges and incorporates by reference the allegations in Paragraphs 1 through 55 of this Complaint as if fully restated herein.

57. The Cognovit Judgment remains a valid judgment in full force and effect, and remains unsatisfied.

58. Maxus has engaged in domestication of judgment efforts in Oklahoma and Texas – the contemplated locations for the 1452 Equipment – and contemplates additional domestication efforts will occur in Louisiana, Nevada, and other states not yet known.

59. As the result of the Judgment Debtors' multi-state enterprise; the highly mobile nature of the 1450 Equipment, 1452 Equipment, and 1462 Equipment; the Judgment Debtors' refusal to share necessary and important information relating to the location of the equipment; and what Vivakor's former CFO described as the Judgment Debtors' efforts to "hinder, delay, and

defraud" creditors like Maxus, conventional collection efforts have been thwarted and are unlikely to be effective when pursued piecemeal across states.

60. Due to the multi-state nature of the Judgment Debtors' enterprise and the highly mobile nature of the equipment that is the subject of the leases, state court remedies are insufficient to secure against the Judgment Debtors' dissipation of assets, fraudulent transfers, and other efforts to "hinder, delay, and defraud" Maxus in its efforts to secure and locate the equipment that it leased to the Judgment Debtors, retrieve the equipment, realize upon other collateral, and otherwise pursue the amounts due and owing to Maxus pursuant to the Cognovit Judgment.

61. Pursuant to Civ.R. 69, this Court may facilitate "proceedings supplementary to and in aid of judgment or execution" in a manner that accords with the procedure of the state where the court is located. Further, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person – including the judgment debtor – as provided in the [Federal Rules of Civil Procedure] or by the procedure of the state where the court is located" Fed. R. Civ. P. 69(a)(2).

62. Pursuant to Ohio R.C. § 2333.22, the Court in aid of execution, may issue such orders including the appointment of a receiver and an injunction against the transfer, disposition of, or other interference with the property of a judgment debtor. Further, pursuant to Ohio R.C. § 2333.09, *et seq.* the Court in aid of execution may order the examination of a judgment debtor and permit other such discovery as may be necessary for the judgment creditor to enforce its rights.

63. In aid of execution of the Cognovit Judgment, Maxus seeks to: (a) compel disclosure of vital information necessary to locate the equipment and other collateral, locate funds and receivables due and owing to the Judgment Debtors and in which Maxus has an equitable

interest, and conduct other such discovery necessary for Maxus to enforce its rights under the judgment; (b) obtain a permanent injunction against the dissipation and transfer of the Judgment Debtors' assets and funds, from which the judgment may be satisfied; and (c) seek the appointment of a Receiver over the Corporate Judgment Debtors, to operate the Corporate Judgment Debtors and preserve their assets for the benefit of the Corporate Judgment Debtors' creditors.

**COUNT II**
**APPOINTMENT OF A POST-JUDGMENT RECEIVER**
**The Judgment Debtors**

64.     Maxus realleges and incorporates by reference the allegations in Paragraphs 1 through 63 of this Complaint as if fully restated herein.

65.     This Court has broad equitable power to grant ancillary relief, including the appointment of a receiver.

66.     This Court has the power to appoint a receiver whenever such appointment is deemed necessary – a determination which involves such factors as (a) a valid claim by the party seeking the appointment; (b) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (c) imminent danger that property will be concealed, lost, or diminished in value; (d) inadequacy of other legal remedies; (e) lack of drastic equitable remedies; and (f) the likelihood that appointing the receiver will do more good than harm. *See Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993); *BMW of N.Am., LLC v. CJM Automotive II, LLC*, N.D. Ohio No. 1:17-cv-2688, 2018 U.S. Dist. LEXIS 112982 (Apr. 26, 2018).

67.     Pursuant to Ohio R.C. § 2735.01, a receiver may be appointed in certain circumstances, including: "(4) after judgment, to carry the judgment into effect; . . . (6) when a corporation, limited liability company, partnership, limited partnership, or other entity has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate, limited

19

liability company, partnership, limited partnership, or other entity rights; or (7) in all other cases in which receivers have been appointed by the usages of equity." Such a receiver may be appointed to manage all the affairs of the corporate or other business entity. R.C. § 2735.01(C)-(D).

68.     Here, a receivership is warranted because it is the only mechanism that serves to protect all interested parties – not only Maxus and other creditors who would face recovering far less as enterprise value is destroyed and assets are transferred or absconded due to the Judgment Debtors' wrongful efforts to "hinder, delay, and defraud" them as alleged by Vivakor's former CFO, but also the public shareholders of Vivakor who are in danger of losing the value of their investment as a result of Ballengee's and the other Judgment Debtors' "secret[] . . . series of transactions intended to hinder, delay, and defraud" creditors through the undercapitalization of Vivakor, breach of multiple contractual obligations, and insider transactions benefitting Ballengee personally.  A bankruptcy would result in exceptional and immediate harm to these individuals, however, and also impair the ability of the enterprise to maximize its value and the value of its assets for the benefit of its creditors, shareholders, and other interested parties.  On the other hand, a Receivership would allow the valuable assets to be sold at non-distressed prices and for operations to be stabilized under the supervision of a neutral party.

69.     Maxus, other creditors, and the shareholders of Vivakor, will suffer immediate and irreparable harm unless a receiver is appointed.  Specifically, Maxus is presently owed in excess of $20 Million pursuant to the Cognovit Judgment and other outstanding amounts due and payable to Maxus.  It is unknown to Maxus how many millions of dollars the Judgment Debtors owe to other entities, especially as the Judgment Debtors continue to take on additional debt facilities.  If Ballengee and the other Judgment Debtors are permitted to continue transferring the enterprise's assets, conducting additional debt transactions that further impair the assets serving as collateral

to existing creditors, and otherwise engaging in activities that put the enterprise at great risk of insolvency, Maxus and other interested parties will be unable to recover the amounts due and owing to them.

70.     A single federal receivership over the collective, multistate enterprise would enable the preservation of all assets and operations of the enterprise in a coordinated, consolidated fashion through application of 28 U.S.C. § 754 and 28 U.S.C. § 1692.

71.     Maxus is undertaking a diligent and expedient search for an appropriate receiver to nominate, with experience in the Oil and Gas Industry, and will file a Motion for Appointment of Receiver and proposed order as soon as a qualified, suitable, and independent nominee is identified.

**COUNT III**
**TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTION**
**The Judgment Debtors**

72.     Maxus realleges and incorporates by reference the allegations in Paragraphs 1 through 70 of this Complaint as if fully restated herein

73.     This Court has broad equitable power to grant ancillary relief, including the issuance of an order enjoining the dissipation of assets or otherwise prohibit conduct in hindrance of the execution of a judgment.

74.     In light of Vivakor's former CFO's disclosure of significant insider transactions intended to "hinder, delay or defraud" creditors, public filings by Vivakor indicating that additional debt facilities or transactions transferring Vivakor's assets are contemplated, the Judgment Debtors' refusal to disclose information and efforts to abscond with or otherwise transfer to insiders funds and assets from which Maxus's judgment might otherwise be satisfied, the Judgment Debtors' refusal to verify the location of equipment that Maxus owns and leased to the

21

Judgment Debtors, and the theft of two vehicles belonging to Maxus, and in light of the multi-state nature of the Judgment Debtors' enterprise, there is a substantial likelihood that Maxus will suffer significant harm in the absence of an injunction issued at the federal court level.

75.     The harm is irreparable, as the above-described actions have caused the Judgment Debtors to become insolvent, or have placed the Judgment Debtors in significant risk of becoming insolvent, and unable to pay their debts – including those owed to Maxus pursuant to the Cognovit Judgment and other obligations due and owing to Maxus.

76.     Further, Maxus faces the risk of substantial and irreparable harm to the extent the Judgment Debtors' refusal to provide information regarding the location of Maxus's equipment has hindered Maxus's ability to trace and secure the equipment.

77.     There is no other adequate remedy at law, as the Judgment Debtors' insolvent, or at risk of insolvency, and unable to satisfy a money judgment, if not enjoined from further transferring, concealing, or otherwise dissipating their assets will.  Further, due to the multi-state nature of the enterprise and the mobility of the equipment, a state court injunction is insufficient due to the territorial limitations of state courts' jurisdiction.

78.     Maxus requests that the Court enter an injunction that prohibits the Judgment Debtors from transferring their assets and funds without leave of this Court (or at the direction of a duly appointed receiver); prohibits the Judgment Debtors from taking on new debt facilities without leave of this Court (or at the direction of a duly appointed receiver), requires the Judgment Debtors to preserve all books, records, and receivables; prohibits James Ballengee interfering with in the operations of the Corporate Judgment Debtors or otherwise hindering the Judgment Debtors' creditors; and requires the Judgment Debtors to provide the information that Maxus requires to

22

locate and protect its interests in the equipment that it leased to the Judgment Debtors and other collateral.

## COUNT IV
## CREDITOR'S BILL
### The Judgment Debtors

79. Maxus realleges and incorporates by reference the allegations in Paragraphs 1 through 77 of this Complaint as if fully restated herein.

80. The Cognovit Judgment remains in full force and effect, and remains unsatisfied.

81. Upon information and belief, acquired in the course of Maxus's enforcement efforts, the Judgment Debtors are actively working to transfer, sell, impair, or otherwise divert Maxus's equipment, other collateral, and funds from which Maxus's Cognovit Judgment and other outstanding amounts due and owing to Maxus.

82. Upon information and belief, the Judgment Debtors have interests in other contracts, receivables, and rights due and owing from third parties, or have an equitable and legal right to funds or interests held by third parties.

83. Plaintiff has an equitable and legal right to the interest that the Judgment Debtors have or may have under any money, contract, claim, choose in action, goods, receivables or other property or rights due and owing to the Judgment Debtors by third parties.

84. Pursuant to R.C. § 2333.01, the filing of this Creditor's Bill action secures a lien on the Judgment Debtors' contracts, receivables, rights due and owing from third parties, and other property which is the subject of this action, up to and including all amounts due and owing to Maxus pursuant to the Cognovit Judgment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Maxus Capital Group, LLC, respectfully requests that judgment be entered in its favor and against Defendants Vivakor, Inc., Vivakor Transportation, LLC, VivaVentures Remediation Corporation, James Ballengee, Silver Fuels Delhi LLC, Jorgan Development, LLC, Meridian Equipment Leasing LLC, White Claw Colorado City LLC, Bacchus Capital Trading, LLC, Silver Fuels Processing LLC, Silver Fuels, LLC, White Claw Crude, LLC, Endeavor Crude, LLC, and Equipment Transport, LLC, as follows:

A.      On **COUNT I**, an Order requiring the Judgment Debtors to answer and make full and complete disclosure of all of the property, whether real, personal, or mixed, which the Judgment Debtors have any interest, whether equitable or legal; and compelling disclosure of vital information necessary to locate Maxus's equipment and other collateral, locate funds and receivables due and owing to the Judgment Debtors and in which Maxus has an equitable interest, and conduct other such discovery necessary for Maxus to enforce its rights under the judgment; requiring the Judgment Debtors to apply all property and funds in their possession or control for the satisfaction of Maxus's Cognovit Judgment, and other amounts due and owing to Maxus, until paid in full; and

B.      On **Count II**, the appointment of an appropriate and qualified receiver to take control of the Judgment Debtors' operations, and preserve their assets for the benefit of Maxus and other interested parties;

C.      On **Count III**, an Order that prohibits the Judgment Debtors from transferring their assets and funds without leave of this Court (or at the direction of a duly appointed receiver); prohibits the Judgment Debtors from taking on new debt facilities

24

without leave of this Court (or at the direction of a duly appointed receiver), requires the Judgment Debtors to preserve all books, records, and receivables; prohibits James Ballengee interfering with in the operations of the Corporate Judgment Debtors or otherwise hindering the Judgment Debtors' creditors (including Maxus); and requires the Judgment Debtors to provide the information that Maxus requires to locate and protect its interests in the equipment that it leased to the Judgment Debtors and other collateral.

D.  On **Count IV**, a Order declaring that Maxus has an equitable right and interest in all amounts due and owing from third parties to the Judgment Debtors, and all property in which the Judgment Debtors have a right or interest to that sits in the hands of any third party; that such amounts and property due to the Judgment Debtors be applied in the satisfaction of Maxus's Cognovit Judgment, and other amounts due and owing to Maxus, until paid in full;

E.  An award of all costs and expenses that Plaintiff Maxus Capital Group, LLC incurs to collect such outstanding amounts, plus the costs of this Action;

F.  An award of reasonable costs and attorneys' fees; and

G.  Any other relief as this Court may deem just and proper.

Respectfully submitted,

MCDANIEL M. KELLY (0097628)
L. WILLIAM ERB (0072495)
950 Main Avenue, Suite 500
Cleveland, Ohio  44113
Telephone: (216) 443-9000
Facsimile: (216) 443-9011
Email: mkelly@porterwright.com
        lerb@porterwright.com
*Attorneys for Plaintiff, Maxus Capital Group, LLC*

25

## VERIFICATION

I, ANTHONY GRANATA, verify and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Vice President and Assistant Treasurer of Maxus Capital Group, LLC ("Maxus").  I have read the foregoing Verified Complaint and know the contents thereof and state that the allegations are true to the best of my knowledge.  I base this Verification on my personal knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury under that the foregoing is true and correct.

Executed on May 11, 2026.

ANTHONY GRANATA
VICE PRESIDENT AND ASSISTANT TREASURER
MAXUS CAPITAL GROUP, LLC

24127493